UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS CROUSE,            )
    Petitioner,          )
                      )
    v.                   )     C.A. No. 07-12004-MLW
                      )
THOMAS DICKHAUT,          )
    Respondent.          )

MEMORANDUM AND ORDER

WOLF, D.J.                                    March 13, 2013

I. INTRODUCTION

Thomas Crouse, pro se, petitioned this court for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. Crouse was convicted in 2002 of murder in the first degree and arson of a dwelling by a jury sitting in the Middlesex Superior Court of the Commonwealth of Massachusetts. His convictions were subsequently affirmed by the Massachusetts Supreme Judicial Court. This court has carefully reviewed the record and memoranda submitted by the parties. For the reasons stated in this Memorandum and Order, the petition is being denied.

II. PROCEDURAL HISTORY

The procedural history, which is not in dispute, is as follows.

On June 27, 2001, a Middlesex County grand jury returned an indictment charging the petitioner with murder in the first degree and arson of a dwelling. The charges arose out of the death of a fourteen-year-old girl, Kelly Hancock, and the burning of a

function room at the Malden Mills condominium complex in Malden. On September 27, 2002, after a trial by jury in Middlesex Superior Court, the petitioner was convicted of both charges.  With respect to the conviction of murder in the first degree, the jury convicted the petitioner on the theories of deliberate premeditation and extreme atrocity or cruelty.[1]

Petitioner appealed his convictions to the Massachusetts Supreme Judicial Court (the "SJC").  On October 23, 2006, that court affirmed the convictions.  See Commonwealth v. Crouse, 447 Mass. 558 (2006).

On October 22, 2007, petitioner filed the instant petition pursuant to 28 U.S.C. §2254.  The petition was filed within the one-year statute of limitations set by 28 U.S.C. §2244(d).

On February 29, 2008,[2] respondent Thomas Dickhaut, superintendent of the Souza-Baranowski Correctional Center, moved to dismiss the petition on the grounds that (1) the petitioner had failed to exhaust his claims – in particular Claim D of the Petition – in state court as required by 28 U.S.C. §2254(b)(1); and (2) the Petition improperly includes legal argumentation.  In an August 29, 2008 Memorandum and Order, the court denied the motion

---

[1] The Commonwealth also proceeded on a theory of felony murder based on the uncharged predicate felony of attempted forcible rape of a child.  The jury rejected the felony murder theory.

[2] The time for the respondent to file a response was extended by order of the court.

to dismiss without prejudice.  See Memorandum and Order of August 29, 2008 at 1-2, 9.  Specifically, the court found that the record was insufficient to assess the respondent's exhaustion argument, and the court rejected the respondent's contention concerning improper legal argumentation.  See id.  The court ordered the respondent to submit the complete state court record so that it could properly assess the exhaustion issue.  Id. at 9.

On October 28, 2008, the respondent answered the Petition and submitted an appendix containing materials from the state court record in the petitioner's case.[3]  See 28 U.S.C. §2254 Rule 5(c). The materials provided were relevant to the respondent's exhaustion argument, and to the claims raised in the Petition generally.  See id.  On August 10, 2009, the respondent moved for judgment on the pleadings, reiterating his exhaustion argument.

On August 15, 2011, having reviewed the materials submitted by the respondent, the court issued a Memorandum and Order finding that the petitioner had not exhausted Claim D of the Petition in the state courts.[4]  Aug. 15, 2011 Order at 3 (Docket No. 25); see

---

[3] The appendix also identified what other materials in the state court record were available and when they could be furnished.  See 28 U.S.C. §2254 Rule 5.

[4] Claim D of the Petition was captioned "The Trial Court Committed Error By Admitting Evidence of a Canine Alert That Could Not Be Confirmed By Subsequent Laboratory Tests."  See Aug. 15, 2011 Order at 2.  The petitioner's appellate brief before the SJC had included an argument captioned "The Trial Court Committed Reversible Error in Admitting Evidence of the Unconfirmed Canine Alert."  Id. at 5.  The argument in the SJC brief had only

28 U.S.C. §2254(b)(1).   Accordingly, the court ordered the
petitioner to either request deletion of Claim D or move for a stay
to permit exhaustion of Claim D in state court.   Aug. 15, 2011
Order at 9.   The petitioner moved to delete Claim D and the court
allowed the motion.

On November 18, 2011, the respondent submitted a Memorandum of
Law in Opposition to Petition, arguing that the remaining claims in
the Petition did not demonstrate an entitlement to habeas relief,
and that the Petition should, therefore, be denied.   The petitioner
submitted an opposition to the respondent's memorandum, reiterating
the arguments made in his Petition.

III. HABEAS CORPUS UNDER 28 U.S.C. §2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA"),
110 Stat. 1214 (1996), establishes the deferential standard of
review applied by a habeas court for the review of a state court
judgment that is rendered "on the merits." See 28 U.S.C. §2254(d).[5]

_____

fleetingly referred to due process.  Id.  This court's Memorandum
and Order found that these references were insufficient to alert
the SJC to the possible federal nature of the petitioner's
claims.  Id.

[5] Section 2254(d) states:

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court
shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless
the adjudication of the claim--
    (1) resulted in a decision that was contrary to, or
    involved an unreasonable application of, clearly
    established Federal law, as determined by the Supreme

4

However, this standard does not apply to all state court judgments: if the state court fails to address the merits of a federal claim, this court reviews that claim de novo. See id. However, the state courts need not explicitly cite federal precedent or give detailed reasons for rejecting a claim for the federal claim to be deemed addressed "on the merits." See Lyons v. Brady, 666 F.3d 51, 54 (1st Cir. 2012). Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784 (2011). In addition, a federal claim is deemed adjudicated on the merits if the state court applies "'a state law standard that is at least as protective of the defendant's rights as its federal counterpart.'" Kirwan v. Spencer, 631 F.3d 582, 587 (1st Cir. 2011) (quoting Young v. Murphy, 615 F.3d 59, 64-65 (1st Cir. 2010)).

Under AEDPA, the court must determine whether the decision below: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme

---

> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. §2254(d); DeBurgo v. St. Amand, 587 F.3d 61, 67 (1st Cir. 2009); see also Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009) (defining unreasonable application of clearly established federal law); Whitney v. Spencer, No. 07-10820-MLW, 2011 WL 4625352 (D. Mass. Sept. 29, 2011). In doing so, the court relies on the facts found by the state courts, supplemented with other facts from the record that are consistent with the state court's findings. See Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006), Whitney, 2011 WL 4625352, at *1. The court must presume that the state court's factual determinations are correct unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary. See 28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000); see also DeBurgo, 587 F.3d at 62 (stating that federal court is "bound to 'accept the state court findings of fact unless [petitioner] convinces [the court], by clear and convincing evidence, that they are in error"); Lynch, 438 F.3d at 39 (same). This presumption of correctness applies whether the factual finding is made by a state trial court or a state appellate court. See Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007).

IV. FACTS

6

Crouse does not challenge any state court factual determinations. Rather, he asserts various errors of law.[6] The following is an overview of the facts of the case as recited by the SJC, supplemented where necessary with additional undisputed facts from the record. See Lynch, 438 F.3d at 39. Certain facts are reserved for the discussion below of specific claims.

On July 18, 2000, at 5:30 a.m., the petitioner was seen crossing the parking lot of the Malden Mills condominium complex, pulling a child's wagon. Crouse, 447 Mass. at 560. The petitioner lived at Malden Mills with his girlfriend and two children. Id. The petitioner's Chevrolet Blazer was parked in the space reserved for visitors. Id. Just after 6:00 a.m., the petitioner went to a nearby Mobil station, where he paid cash for five dollars worth of gasoline. Id. Surveillance cameras showed him lifting the tailgate window of his Blazer and putting the gasoline nozzle into the right rear cargo area. Id. The petitioner was then seen returning to Malden Mills less than two minutes later and, about five minutes after that, driving out of the parking lot at a high rate of speed. Id.

At 6:19 a.m., the fire alarm rang at Malden Mills. Id.

---

[6] In any event, as stated, this court must presume that the state court's factual determinations are correct, unless the petitioner rebuts this presumption by presenting "clear and convincing evidence" to the contrary. See 28 U.S.C. §2254(e)(1); Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). The petitioner has not made, nor attempted to make, any such showing.

Firefighters arrived within minutes and found the basement function room full of smoke.  _Id._  The sprinkler had been activated.  _Id._ The room was in disarray, and there were bloodstains on the burned carpet and furniture.  _Id._  Bloodstains and swipe markings along the wall were consistent with a bloody object being moved along the wall toward the door.  _Id._

Around 7:00 a.m., the petitioner, his girlfriend, and the children arrived at his girlfriend's home in Manchester, New Hampshire.  _Id._ at 560.  The petitioner's stepfather alerted police to his presence in New Hampshire.  _Id._ at 561.  The police traveled to New Hampshire, where they interviewed the petitioner and his girlfriend.  _Id._  The petitioner told police that on the previous night, he had not left his home after 8:00 p.m.  _Id._

Among the evidence introduced by the Commonwealth at the petitioner's trial were his cell phone records, which showed him making calls to his home telephone after 8:00 p.m on the night of the murder.[7]  _Id._ at 560-61.  The records also showed numerous calls made on the cell phone from Manchester the following morning, and "a great number" of calls to and from the phone on the following day, July 19, 2000.  _Id._  In one call on July 19, 2000, the petitioner stated to a friend that he was "in trouble."  _Id._

---

[7] This factual summary does not discuss all of the evidence introduced against the petitioner at his trial, as not all of the evidence is relevant to the habeas Petition.  A more complete recitation of the facts can be found in the SJC's decision.

Three days later, that friend's girlfriend observed deep, red scratch marks on the petitioner's chest. <u>Id.</u>

In October 2000, the police obtained a search warrant for the petitioner's Blazer. <u>Id.</u> at 561. Small bloodstains were found in the Blazer. <u>Id.</u> at 561-62.

In April 2001, skeletal remains were found by a jogger in Hookset, New Hampshire. <u>Id.</u> at 562. The remains could not be identified, other than that they belonged to a Caucasian female. <u>Id.</u> However, DNA from the remains matched DNA from the blood found in the function room at Malden Mills. <u>Id.</u> The body had been buried face-down in a shallow grave, using both round-ended and square-ended shovels. <u>Id.</u> At the bottom of a nearby ravine, two rusty shovels – one round-ended and one square-ended – were found. <u>Id.</u>

In June 2001, the petitioner was indicted for murder and arson. <u>Id.</u> at 562-63. While awaiting trial in a Cambridge, Massachusetts jail, the petitioner allegedly confessed to a fellow inmate, Gerard Inonti, that he had raped and murdered the victim in the function room of Malden Mills, burned the room, and buried the victim's body in Hookset, New Hampshire. <u>Id.</u> at 563.

Prior to trial, the petitioner moved to exclude from evidence, if he chose to testify, his prior convictions. <u>Id.</u> The trial judge deferred a ruling on the motion, pending information about the Commonwealth's case. <u>Id.</u> A few days before trial, the judge

denied the motion.   Defense counsel did not renew the motion at trial.  Id. at 564.

The petitioner did not testify at his trial.  Id. at 563.  His theory of defense was that he had nothing to do with the murder or the fire.  Id.

At the trial, an important witness for the Commonwealth was Intonti, who testified to multiple details that, the prosecutor argued, he would not have known if the petitioner had not confessed to him.  Id.  The petitioner's probation officer also testified for the Commonwealth.  Id. at 566.  The probation officer testified that the petitioner had mentioned the fire at Malden Mills "in the context of statements that revealed his anxiety over the fact that he was under police investigation."  Id.  The probation officer also testified, over objection, that she was supervising the petitioner for a "felony" conviction.[8]  Id.

There was no dispute at the trial that the fire had been set deliberately.  Id. at 560.  A witness for the Commonwealth, State Trooper Paul Horgan, testified that the fire had been set about ten minutes before the alarm sounded at 6:19 a.m.   Id. Although not discussed in the SJC's decision, this fact evidently was relevant because the petitioner sought to establish that he had left the apartment at 6:00 a.m., and that the fire was set after that.

---

[8] The trial judge had previously allowed the petitioner's motion in limine to exclude testimony about the fact that the felony at issue was rape.  Crouse, 447 Mass. at 566 n.8.

Petition at 10-11.   In contrast to the petitioner's experts, who testified that the fire was probably set soon before the alarm rang, Trooper Horgan's testimony indicated that the fire could have been started at an earlier time.   Id.

V. ANALYSIS

The remaining claims in the Petition are labeled Claims A, B, C, E, F, and G.   The court has analyzed each claim in order.

A. Claim A.

Petitioner first claims that the trial court impermissibly denied his motion in limine to "exclude from evidence, if he chose to testify, his prior convictions, including convictions of rape and aggravated rape, breaking and entering while armed with a knife, assault in a dwelling while armed with a screwdriver, and assault and battery by means of a knife and a screwdriver." Crouse, 447 Mass. at 563-64; Petition at 4-6. Petitioner contends that the trial court's decision unconstitutionally deterred him from testifying in his own defense because "[t]here was no way the petitioner could have taken the stand in his defense where the prosecutor was armed with the freedom to use the rape conviction for impeachment purposes." Petition at 5. The SJC considered and rejected petitioner's claim on the merits. See Crouse, 447 Mass. at 563-66. However, the SJC's review was only for a "substantial likelihood of a miscarriage of justice" because petitioner failed to renew his objection at trial. Id. at 564.

Generally, habeas review is precluded when a state court reaches its decision on an independent and adequate state law ground. Coleman v. Thompson, 501 U.S. 722, 729 (1991); see Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011). A petitioner's procedural default constitutes an independent and adequate state ground if the state consistently applies the rule and has not waived it. See Wainwright v. Sykes, 433 U.S. 72, 87 (1977); see Jewett, 634 F.3d at 76. The First Circuit has "held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). It is well established that the SJC's limited review of a procedurally defaulted claim under its miscarriage of justice standard does not constitute a waiver of a petitioner's procedural default. See, e.g., Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004).

A habeas court may consider a procedurally defaulted claim only if the petitioner establishes "cause and prejudice" for the procedural default. See Dretke v. Haley, 541 U.S. 386, 393 (2004). Here, petitioner does not attempt to show "cause and prejudice" for his failure to object at trial. See Petition at 4-6. Therefore, this court may consider Claim A only if failure to do so would result in a fundamental miscarriage of justice. See Dretke, 541

U.S. at 393.   Determining whether a fundamental miscarriage of justice has occurred requires an analysis of Claim A on the merits. The court is, therefore, addressing Claim A on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §2254(b)(2); see also Dretke, 541 U.S. at 392 (holding that the procedural default rule is a "corollary to the habeas statute's exhaustion requirement . . . .").

The SJC considered and rejected petitioner's claim on the merits.   See Crouse, 447 Mass. at 563-66.   Accordingly, habeas relief is not appropriate unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. §2254(d)(1).   The Supreme Court has held that a defendant's right to testify in his or her own defense is "one of the rights 'that are essential to due process of law in a fair adversary process.'" Rock v. Arkansas, 483 U.S. 44, 51 (1987) (quoting Faretta v. California, 422 U.S. 806, 819 n.15 (1975)). However, this right is not implicated by impeachment evidence that may deter a defendant from testifying. See Ohler v. United States, 529 U.S. 753, 759 (2000). "'It is . . . generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions . . . . [I]t is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and

13

cons in deciding whether to testify'" Id. at 759-60 (quoting McGautha v. California, 402 U.S. 183, 215 (1971) (citations omitted), vacated on other grounds, Crampton v. Ohio, 408 U.S. 941 (1972)).

These principles control the court's decision here. The petitioner's failure to testify forecloses his constitutional due process claim. See Ohler, 529 U.S. at 759.

Similarly, in Luce v. United States, a case cited by the SJC in its analysis, at 442 Mass. at 564, the Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Luce v. United States, 469 U.S. 38, 43 (1984); see Crouse, 442 Mass. at 564-65 & n.3. The Ninth Circuit has held that although Luce was decided as a procedural rule, it applies in a habeas proceeding because "it surely follows that [the requirements of Luce] do not violate the United States Constitution." Galindo v. Ylst, 971 F.3d 1427, 1429 (9th Cir. 1992).

As in Luce, here "[a]ny possible harm flowing from [the] district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative." Luce 469 U.S. at 41. A ruling on a motion in limine does not bind the trial court, and so "it would be a matter of conjecture whether the [trial court] would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction." Id. at 41-42. The

14

Commonwealth may have elected "not to use an arguably inadmissible prior conviction." Id. at 42.  Furthermore, "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor,' a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." Id. (quoting New Jersey v. Portash, 440 U.S. 450, 467 (1979) (Blackmun, J., dissenting)).

Therefore, Claim A is being denied because the trial court's denial of petitioner's motion in limine to exclude prior convictions was not "contrary to, or . . . an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. §2254(d)(1).

B. Claim B.

In Claim B, the petitioner asserts that his constitutional rights to present evidence on his own behalf and to cross-examine prosecution witnesses were violated by the trial judge's having foreclosed a line of questioning that his defense counsel wished to pursue on cross-examination of State Police Lieutenant James M. Connolly.  Petition at 6-8.  The respondent argues that the trial judge's ruling did not violate any clearly established federal law and, even if it did, any such violation was harmless.  Respondent's Memo. in Opp. to Petition at 22-27.  The court will first discuss the facts relating to defense counsel's cross-examination of Lieutenant Connolly, in order to place the cross-examination in

context.

      i. <u>Facts Relating to the Cross-Examination of Lieutenant Connolly</u>.

As stated earlier, Intonti was an important witness at trial. Intonti testified that while he was housed in a Cambridge jail with the petitioner from February 7 to April 16, 2002, the petitioner stated that he had raped the victim in the Malden Mills function room, murdered her, set fire to the room, and buried the body in Hookset, New Hampshire.   <u>See</u> <u>Crouse</u>, 447 Mass. at 563, 572. Intonti also "testified at length to multiple details of the case that, the Commonwealth argued to the jury, he would not have known had the [petitioner] not told him."   <u>Id.</u> at 563.   One detail recounted by Intonti was that the petitioner had worried and stayed in bed for days after being told that the police had found a "blue fiber" on one of the shovels.   <u>Id.</u> at 573.

The petitioner attempted to discredit Intonti's testimony by arguing that Intonti could have learned details of the case by reading discovery materials kept in the petitioner's cell.   <u>See</u> <u>id.</u> at 573.   To that effect, defense counsel called two corrections officers, who testified that:

> they had observed Intonti going "in and out" of the [petitioner's] cell and that, between March 25 and April 16, Intonti's bunk was adjacent to the [petitioner's] bunk, under which he stored a box full of legal papers. One of the officers testified to seeing the [petitioner] and Intonti sitting together at a table with many papers.

<u>Id.</u> at 563.

The prosecutor then called Lieutenant Connolly to rebut this testimony and to corroborate Intonti's testimony.  Id. at 573. Connolly testified that the discovery materials in the petitioner's cell were voluminous, would have taken at least forty hours to read, and did not contain certain details that were in the petitioner's admissions to Intonti.  Id.

On cross-examination, defense counsel elicited from Lieutenant Connolly that a report regarding the fiber evidence from the shovels had not been provided to the petitioner until April 26, 2002 – ten days after Intonti had departed the jail.[9]  Id.  Defense counsel then attempted to ask Connolly whether the notes referred to a blue fiber, to which the prosecutor objected.  Id.  There followed a conference at sidebar, discussed in the SJC decision as follows:

> At a sidebar conference, defense counsel admitted to the judge that he was "perplexed" to learn that information about a blue fiber was not provided to the defense until after Intonti left the Cambridge jail.  He stated to the judge, "The inference is, I think, Intonti somehow had information on this before I did.  I went through the file.  This is the first thing I see about a blue fiber that [the petitioner], months before, laid down in his bed for four months . . . because he found out about it, and I got the thing after [Intonti] left."  In response, the prosecutor pointed out, essentially, that the witness had been called as a rebuttal witness, not to provide substantive testimony, but solely to demonstrate that the discovery materials available to the [petitioner] before April 16 had nothing to say about certain details of

---

[9] The eighty-six-page report contained the notes of two New Hampshire police chemists who had analyzed the fiber evidence found on the shovels.  Crouse, 447 Mass. at 573.

> Intonti's testimony.   Any questioning that went to
> discovery materials provided at a later date, therefore,
> fell beyond the permissible scope.   The judge agreed with
> defense counsel that the matter was "perplexing" but
> commented, "I don't know where you can go with it."
> Defense counsel answered, "Neither do I."   Defense
> counsel again attempted to ask Connolly whether the April
> 26 notes referred to <u>blue</u> fiber, and the judge sustained
> the prosecutor's objection.

<u>Id.</u> at 573-74.   The transcript demonstrates that the foregoing is

an accurate summary of the sidebar conference.

The petitioner argued before the SJC that the judge's ruling

interfered with his right under the United States and Massachusetts

Constitutions to effectively present evidence on his own behalf and

cross-examine witnesses for the prosecution.   <u>Id.</u> at 571-72.   The

SJC disagreed.   <u>Id.</u> at 574-75.   First, the SJC held that the

judge's ruling was properly based on "the purpose for which the

witness was called," which was to rebut the petitioner's attack on

Intonti's credibility.   <u>Id.</u> at 574.   Second, the trial judge had

not barred all questions about the blue fiber because defense

counsel could have asked about discovery materials provided to the

petitioner <u>before</u> April 16, 2002 that referenced the blue fiber,

and may have been able to call a witness to testify as to when the

petitioner had received discovery about that fiber.   <u>Id.</u>   Third, it

was "not entirely clear" how the line of questioning benefitted the

petitioner because proving that the petitioner did not have

discovery materials referencing blue fiber until after Intonti left

the jail would evidently undercut the petitioner's argument that

Intonti learned details of the case from reading the discovery materials. Id. at 575.

　　　ii. Legal Standards.

The Sixth Amendment to the United States Constitution guarantees the right of criminal defendants to confront adverse witnesses, and this right necessarily includes the right to cross-examine adverse witnesses. See Davis v. Alaska, 415 U.S. 308, 316 (1974); Douglas v. Alabama, 380 U.S. 415, 418 (1965); Stephens v. Hall, 294 F.3d 210, 226 (1st Cir. 2002); Niziolek v. Ashe, 694 F.2d 282, 289 (1st Cir. 1982). In order to safeguard this right, a trial judge "may not so restrict cross-examination as to deprive the defendant of the constitutionally required threshold level of inquiry, and must give the accused sufficient leeway to establish a reasonably complete picture of the witness's veracity, bias, and motivation." Stephens, 294 F.3d at 226 (internal citations and quotation marks omitted) (citing United States v. Tracey, 675 F.3d 433, 437 (1st Cir. 1982); United States v. Laboy-Delgado, 84 F.3d 22, 28 (1st Cir. 1996)). The right to cross-examine a witness "increases in sensitivity in direct proportion to the witness's importance to the prosecution's case." Bui v. DiPaolo, 170 F.3d 232, 241-42 (1st Cir. 1999).

The Sixth Amendment does not, however, eliminate a trial judge's ability to impose limits on a cross-examination. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); DiBenedetto v.

Hall, 272 F.3d 1, 10 (1st Cir. 2001).   The relevant test was established in the Supreme Court's decision in Delaware v. Van Arsdall.  475 U.S. at 679-81.  The First Circuit has explained Van Arsdall in the following manner:

> The first question to be asked under the Van Arsdall test
> is whether the limitation prejudiced the examination of
> that particular witness.   In other words, absent the
> limitation, would the jury have received a "significantly
> different impression" of the witness's credibility?
> . . . The second element of the Van Arsdall test is
> whether the error was harmless beyond a reasonable doubt;
> if so, reversal is not warranted.

DiBenedetto, 272 F.3d at 10 (internal citations omitted) (citing Van Arsdall, 475 U.S. at 679-80, 681).   The First Circuit has applied this test to habeas petitions under §2254 on a number of occasions, most often to address a petitioner's claim that a trial judge impermissibly limited his Sixth Amendment right to test a witness's possible bias or motive for testifying.   See, e.g., id. at 10-11; United States v. Lynn, 856 F.2d 430 432-434 (1st Cir. 1988); Bui v. DiPaolo, 170 F.2d 232, 241-46 (1st Cir. 1999).   One well-established principle that has emerged from these cases is that a  party's "inability to lay a proper evidentiary foundation for the questions that he wishes to pose" may justify a limitation on cross-examination.   See, e.g., Bui, 170 F.3d at 243 (citing cases).

   iii. Analysis.

Applying these principles, the court finds that the trial judge's ruling did not violate the petitioner's Sixth Amendment

right to confront witnesses because the proposed line of questioning was both unrelated to Lieutenant Connolly's credibility as a witness and to the subject matter of his testimony. See Van Arsdall, 475 U.S. at 679-80, 681; Bui, 170 F.3d at 243. The trial judge's ruling, therefore, did not deprive the petitioner of "the constitutionally required threshold level of inquiry" into Lieutenant Connolly's testimony, and there was no Sixth Amendment violation entitling the petitioner to habeas relief. See Davis, 415 U.S. at 316; Douglas, 380 U.S. at 418; Stephens, 294 F.3d at 226.

Under the first Van Arsdall factor, the trial judge's ruling did not prejudice the examination of Lieutenant Connolly, as allowing the questioning would not have given the jury a "significantly different impression" of his credibility. DiBenedetto, 272 F.3d at 10; accord Van Arsdall, 475 U.S. at 679-80. Indeed, the proposed questioning was unrelated both to Lieutenant Connolly's credibility and to the subject matter of his testimony. Cf. Fed. R. Evid. 611(b) ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."). Lieutenant Connolly provided testimony on direct examination that the discovery materials in the petitioner's cell were voluminous, would have taken at least forty hours to read, and did not contain certain details that were in the petitioner's admissions to Intonti.

Crouse, 447 Mass. at 573.   The purpose of this testimony was to rebut the suggestion, raised in the testimony of the two corrections officers, that Intonti learned what he knew about the case from reading the petitioner's discovery materials.   Id. at 574.  By contrast, defense counsel apparently sought to elicit from Lieutenant Connolly that Intonti would not have known about a blue fiber because it was not among the petitioner's discovery materials until after Intonti had left the jail.   At sidebar, defense counsel struggled unsuccessfully to explain the relevance of this question. See Bui, 170 F.3d at 243 (party's inability to lay a proper evidentiary foundation).   Defense counsel's question would have supported, not undercut, Lieutenant Connolly's testimony, as it would have tended to establish that Intonti could not have known about the blue fiber from reading the discovery materials petitioner had while they were cell mates.  If he had been required to answer the question, the jurors would not have received a "significantly different impression" of Lieutenant Connolly's testimony.   Rather, they would have received the very impression that the Commonwealth sought to create.   See DiBenedetto, 272 F.3d at 10.

The trial judge's limitation on defense counsel's cross-examination of Lieutenant Connolly was, therefore, consistent with clearly established federal law.  Because the court has not found that the trial judge's decision was erroneous, the court need not

undertake a harmless error analysis, which is the second <u>Van Arsdall</u> factor. <u>See</u> <u>Van Arsdall</u>, 475 U.S. at 681; <u>Bui</u>, 170 F.3d at 243. As there was no error, there was no harm.

C. <u>Claim C</u>.

Petitioner's third claim is that the trial court impermissibly allowed Trooper Paul Horgan to testify as an expert "that, in his opinion, it took approximately ten minutes from the time the fire was set until the alarm was activated . . . ." Petition at 9. Petitioner claims that Trooper Horgan was qualified to testify to the origin and cause of the fire, but not to the rate at which the fire heated the room. <u>Id.</u> The Petition does not cite to specific Supreme Court precedent to support this claim. Petition at 8-11. However, petitioner is proceeding <u>pro</u> <u>se</u> and, therefore, his pleadings are held to "less demanding standards to guard against the loss of <u>pro</u> <u>se</u> claims due to technical defects." <u>Dutil v. Murphy</u>, 550 F.3d 154, 158 (1st Cir. 2008). Therefore, the court is not denying the petition merely because petitioner has failed to cite specific clearly established federal law.

The petitioner did argue before the SJC that allowing Trooper Horgan to testify as an expert without sufficient qualifications amounted to a denial of due process. <u>See</u> Brief of the Defendant/Appellant on appeal to the Massachusetts Supreme Judicial Court at 39-40, <u>Commonwealth v. Crouse</u>, 447 Mass. 558 (2006) (No. SJC-9020) ("Petitioner's SJC Brief"). The SJC considered and

rejected petitioner's claim on the merits, holding that "questions or criticisms as to whether the basis of the expert's opinion is reliable go to the weight, and not the admissibility, of the testimony." Crouse, 447 Mass. at 569.

The court reviews this claim for a violation of clearly established federal law under §2254(d)(1), and not for an unreasonable determination of the facts under §2254(d)(2). The §2254(d)(2) standard is reserved for "'basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators.'" Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001) (quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir. 1999)). "Inferences, characterizations of the facts, and mixed fact/law conclusions are more appropriately analyzed under the 'unreasonable application' prong of section 2254(d)(1)." Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002). Here, petitioner does not contest the basic facts of Trooper Horgan's training and experience, but contests the application of those facts to the evidentiary rules concerning expert testimony. See Petition at 9-11. Therefore, the §2254(d)(1) standard is appropriate.

Petitioner's claim is rooted in the trial court's application of Massachusetts evidentiary rules relating to expert testimony. See Petition at 8-9. "Because federal habeas relief does not lie for errors of state law, federal habeas review of a state court's

24

application of [state law] is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process . . . violation." <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990). This standard is not a "finely-tuned review of the wisdom of state evidentiary rules . . . ." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983). Instead, the court must deny the Petition unless the evidentiary rulings "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).

Petitioner contends that a "conviction based on unreliable evidence . . . violates a defendant's right to due process." Petitioner's SJC Brief at 39-40. However, due process does not require that all evidence admitted against a criminal defendant be reliable:

> It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness an obvious example being the testimony of witnesses with a bias. While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart the "integrity" of the adversary process. "Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts . . . ."

<u>Manson v. Brathwaite</u>, 432 U.S. 98, 113 n.14 (1977) (internal citations omitted) (quoting <u>Clemons v. United States</u>, 408 F.2d 1230, 1251 (1968)); <u>see also</u> <u>Kansas v. Ventris</u>, 556 U.S. 586, 594

n.* (2009).[10]  In other words, the adversarial system of trial gives defendants the opportunity to expose the flaws of unreliable evidence through "vigorous cross-examination."  <u>United States v. Berry</u>, 624 F.3d 1031, 1040 (9th Cir. 2010).

Here, defense counsel had this opportunity. <u>See</u> Trial Transcript Volume X at 224-237, 243-245. Defense counsel elicited testimony that Trooper Horgan had never been qualified as an expert to testify "regarding delay between ignition of a fire and activation of a sprinkler head." <u>Id.</u> at 224. He further questioned Trooper Horgan regarding whether the location of the fire in relation to the walls of the Function Room could have allowed the fire to heat the room faster. <u>Id.</u> at 225-26. In addition to cross-examination, petitioner called two expert witnesses to support his theory that the fire could not have started until after he had left the area. Petition at 10.

Based on petitioner's ability to challenge Trooper Horgan's testimony both through cross-examination and through other experts, the trial court's decision to allow Trooper Horgan to testify as an

---

[10] In his brief to the SJC, petitioner cited two Supreme Court cases, <u>Manson v. Braithwaite</u> and <u>Simmons v. United States</u>, to support the claim that evidence admitted at trial must be reliable.  <u>See generally</u> <u>Manson v. Braithwaite</u>, 432 U.S. 98 (1977); <u>Simmons v. United States</u>, 390 U.S. 377 (1968). Petitioner's SJC Brief at 39-40.  However, in both cases the Supreme Court held that an eyewitness identification from a suggestive procedure may be admitted if it is otherwise reliable; the Court did not hold that all evidence must be reliable.  <u>See</u> <u>Manson</u>, 432 U.S. at 111-13; <u>Simmons</u>, 390 U.S. at 386-87.

expert to the time between the ignition of the fire and the alarm was not "so arbitrary as to render [petitioner's] trial 'fundamentally unfair.'" Berry, 624 F.3d at 1040.

Therefore, Claim C is being denied because allowing Trooper Horgan to testify as an expert that the fire started approximately ten minutes before the alarm was not "contrary to, or . . . an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. §2254(d)(1).

D. Claim E.

Petitioner's fourth remaining claim is that the trial court improperly allowed the Commonwealth to present evidence related to petitioner's prior conviction, drug use, and sexual activities that "tainted the trial by inviting the jury to reach a verdict based on petitioner's character, rather than on evidence relevant to the charged crime." Petition at 16. The SJC adjudicated these contentions on the merits and, therefore, its decision may only be reversed if it was "contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. §2254(d)(1); see also Crouse, 447 Mass. at 566-69. The Supreme Court has not established a specific constitutional rule governing character or "bad acts" evidence and, therefore "the broader fair-trial principle is the beacon by which we must steer." Coningford v. Rhode Island, 640 F.3d 478, 485 (1st Cir. 2011); see also Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991). Based on this

standard, petitioner's claim is being denied because the evidence in question did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643.

    i. Prior Felony Conviction.

Petitioner first contends that the trial court improperly allowed testimony that he was on probation for a felony. Petition at 13. Petitioner's probation officer testified that petitioner was on probation for a felony, but did not testify that he had been convicted of rape. See Crouse, 447 Mass. at 566 n.8. The Commonwealth used this evidence to support its theory that petitioner raped the victim, and then killed her and set the fire to eliminate evidence and avoid a return to prison. See id. at 566. Petitioner contends that this evidence functioned as an attack on his character and "ensure[d] that the jury was aware that the petitioner had previously been convicted of a serious offense." Petition at 13.

The SJC held that although "[t]he better course would have been to allow the probation officer to testify that she was supervising the [petitioner] 'for a crime,'" the testimony was admissible as motive evidence. See id. at 566 ("The testimony was admissible . . . to support the Commonwealth's theory that the [petitioner] had killed the victim to silence her after committing the rape, and then set the fire to destroy the evidence of his

28

crime, in order to avoid a return to prison.").

The asserted error does not constitute a violation of petitioner's right to due process. Id. at 566. The Supreme Court has held that prior convictions may be admitted at trial without offending due process for purposes including evidence of motive. See Spencer v. Texas, 385 U.S. 554, 560-61 (1967). After the probation officer's testimony, the jury did not know if petitioner had previously committed a violent crime or any other crime similar to the one charged. Id. at 566 n.8. Even if the jury used the probation officer's testimony to make some inference about petitioner's character, it is unlikely that the jury would have reasoned that petitioner committed murder and arson merely from the fact that he was on probation for having committed some unidentified felony. Here, the evidence was even less likely to cause prejudice because petitioner's prior crime was not admitted, only the fact that he was on probation for a felony. Crouse, 447 Mass. at 566. Therefore, testimony by petitioner's probation officer did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643.

        ii. References to the Petitioner's Time in Prison.

Petitioner also claims that both Intonti and another witness,

29

Steven Gordon,[11] impermissibly made reference to his having been in prison. Petition at 14. Intonti testified that petitioner admitted that he killed the victim because "[t]hings got out of hand and nobody wants to go back to jail." Trial Transcript Volume XII at 33. At the request of defense counsel, the trial court struck the remark and gave the following instruction: "The last answer, or part of the last answer in which Mr. Intonti made reference to what allegedly Mr. Crouse said about spending the rest of his life in jail is stricken. It is not evidence in this case. You may not consider it."   Id. at 35-36.[12]   Gordon, when discussing his relationship with petitioner, stated that "[h]e introduced himself, right. We shook hands, you know, and the next time I saw him he told me he just got out of the joint." Trial Transcript Volume VIII at 55. The trial court then twice ordered the jury to disregard the statement. See id. at 55-58.

This court must usually rely on the "'crucial assumption' underlying the system of trial by jury'. . . that juries will

---

[11] Although Steven Gordon is not discussed in the SJC's decision, materials in the record establish that Gordon was a neighbor of the petitioner's who testified as a witness for the Commonwealth.

[12] Petitioner claims that the trial court exacerbated the prejudice of Intonti's remark by misquoting it.   See Petition at 14.   However, the misstatement is not material to the point of the instruction because the trial court unequivocally ordered the jury to disregard the remark.   Trial Transcript Volume XII at 35-36.   Furthermore, the trial court used the same language at sidebar when defense counsel requested the instruction.   Id. at 35.

follow the instructions given them by the trial judge.'" <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983) (quoting <u>Parker v. Randolph</u>, 442 U.S. 62, 73 (1979), <u>abrogated in part Cruz v. New York</u>, 481 U.S. 186, 191 (1987)). However, in certain cases "the risk that the jury will not, or cannot, follow instructions is so great" that such instructions will be insufficient to preserve due process. <u>Gray v. Maryland</u>, 523 U.S. 185, 190 (1998) (quoting <u>Bruton v. United States</u>, 391 U.S. 123, 136 (1968)).

Here, there is no reason to doubt that the jury followed the trial court's instructions. The two statements in question amounted only to vague references to the fact that petitioner was previously in prison. <u>See</u> Trial Transcript Volume XII at 33; Trial Transcript Volume VIII at 55. The statements were neither so incriminating nor so inflammatory that the jury would have ignored the trial court's immediate and clear instructions to disregard the remarks. <u>See Gray</u>, 523 U.S. at 190. Because the trial court issued effective instructions striking the remarks in question, those statements did not violate petitioner's due process rights.

Even if the trial court had not given its instruction, it is unlikely that this claim would rise to the level of a constitutional violation. Vague references, with no elaboration regarding the specific crime or surrounding circumstances, to a petitioner's prior time in prison have been held not to constitute a violation of due process. <u>See, e.g.</u>, <u>Blackmon v. Booker</u>, No. 11-

31

1038, 2012 WL 4774510, at *13 (6th Cir. Oct. 9, 2012).

        iii. <u>Propensity/Character Evidence</u>.

Crouse also objects to the testimony of several witnesses that he "had bragged to another that he liked to 'party' with 'broads' in the private function room . . . and that [he] placed telephone calls to his cocaine supplier on the night of the murder." <u>Crouse</u>, 447 Mass. at 567; Petition at 14-16.  The Petition alleges that this testimony was character evidence that prejudiced the jury against the petitioner. Petition at 14-16.  The challenged evidence was introduced at trial to demonstrate "that the [petitioner] enticed the victim to the function room with the intent of having a sexual encounter and using drugs with her." <u>Crouse</u>, 447 Mass. at 567.  The SJC held that this use of the challenged evidence did not constitute impermissible propensity evidence.  <u>Id.</u>

The evidence in question is "'at least circumstantially valuable'" in demonstrating petitioner's state of mind and intent on the night of the murder.  Therefore, the trial court's admission of this evidence did not violate petitioner's right to due process. <u>Emerick v. Prelesnik</u>, No. 11-1217, 2012 WL 3194493, at *5 (6th Cir. Aug. 8, 2012) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352-54 (1990)).  Moreover, even if the challenged evidence constituted pure propensity evidence, there is no clearly established Supreme Court precedent holding that the admission of propensity evidence violates a defendant's right to due process.

See Jennings v. Runnels, No. 10-16432, 2012 WL 4338818 at *3 (9th Cir. Sept. 4, 2012) (citing Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)).

For the foregoing reasons, the evidentiary rulings challenged in Claim E were not "contrary to, or . . . an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. §2254(d)(1).  Therefore, Claim E is being denied.

E. Claim F.

In Claim F of his Petition, Crouse contends that portions of the prosecutor's opening and closing statements violated his due process right to a fair trial.  Petition at 16-17.  In her opening statement at trial, the prosecutor stated that petitioner "packaged up [the victim] for disposal as if she were garbage."  In her closing statement, the prosecutor twice made reference to the danger posed by the fire to residents of the property and firefighters.[13]  Defense counsel objected to the portion of the opening statement at issue, but did not object to the statements made in the closing.

The SJC decided this claim against the petitioner on the merits, although it applied its substantial likelihood of a

---

[13] Specifically, the prosecutor in her closing statement said that the petitioner had set the fire "without any regard for the lives of the fifty or more people whose apartments were in that building . . . and the fire fighters for the city of Malden who responded . . . ."  Crouse, 447 Mass. at 575.  She also spoke of the "further tragedy that would have been compounded by one man's calculated selfish quest to get away with murder."  Id.

miscarriage of justice standard to the unobjected-to statements. The court held that the prosecutor's statements were all appropriate inferences that the jury could have made based on the evidence, and that a prosecutor's opening and closing statements may be tough, so long as they are fair. Id. at 575-76. The SJC also noted that the judge had repeatedly instructed the jury that closing arguments may not be considered as evidence. Id. at 576.

A prosecutor's remarks may make a criminal defendant's trial "so fundamentally unfair" as to constitute a deprivation of due process rights. Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012); see Darden v. Wainright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643, 645 (2008); Dagley v. Russo, 540 F.3d 8, 16 (1st Cir. 2008). This principle constitutes clearly established federal law that is appropriately raised in a §2254 petition. See Dagley, 540 F.3d at 16; Oszlewski v. Spencer, 466 F.3d 47, 59 (1st Cir. 2006). To succeed on such a claim, it is not enough that a prosecutor's remarks were "undesirable or even universally condemned"; rather, the relevant question is "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Olszewski, 466 F.3d at 59 (internal quotation marks omitted).

In Dagley, the First Circuit analyzed a §2254 habeas claim that a prosecutor's closing argument deprived the petitioner of his due process right to a fair trial by comparing the SJC's analysis

in Dagley's case to that of the Supreme Court in Donnelly, 416 U.S. at 642-45.  See Dagley, 540 F.3d at 16-19.  The court noted that the factors commonly used by the SJC to evaluate such claims, derived from that court's decision in Commonwealth v. Kelly 417 Mass. 266 (1994), focus on the same considerations explicitly addressed by the Supreme Court in Donnelly.  See Donnely, 416 U.S. at 642-45; Dagley, 540 F.3d at 17-18; Kelly, 417 Mass. at 271; see also Dagley, 540 F.3d at 15 n.3 ("The Kelly standard . . . includes all of the factors explicitly considered by the [Supreme Court] in Donnelly and Darden, or close variants thereof, and is also functionally equivalent to our own standard for assessing such claims.").  Factors that are appropriate to consider include "the seriousness of the improper remark, the context in which the statement was made, the court's response or curative instructions, and the effect of the statement on the overall proceeding." Dagley, 540 F.3d at 17-18; see also United States v. Lowe, 145 F.3d 45, 50 (1st Cir. 1998) (listing the following factors: "(1) whether the prosecutor's conduct was isolated or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case"), cited in Olszewski, 466 F.3d at 47.

Here, both the analysis used by the SJC and the result it reached were consistent with clearly established federal law.

First, as the court noted, arguments by a prosecutor must be based on the evidence and fair inferences that can be drawn from the evidence.  See United States v. Meadows, 571 F.3d 131, 145 (1st Cir. 2009); Crouse, 447 Mass. at 575-76; Kelly 417 Mass. at 270. The comments made by the prosecutor in Crouse's case did not refer to facts not in evidence.  Nor were they unreasonable inferences based on the evidence.  As the SJC observed, the "garbage" comment was probably a reference to evidence that the victim's remains had been found surrounded by garbage.  See Crouse, 447 Mass. at 575-76. As the SJC also noted, the prosecutor's comments that the fire could have harmed firefighters or apartment residents is a common sense observation.  Id. at 576.  Second, the court agrees that the prosecutor's comments were of no real import when viewed in light of the entire argument.  See Donnelly, 416 U.S. at 644 (importance of context); Dagley, 540 F.3d at 15 n.3, 17 (same).  The comments at issue were isolated references in the opening and closing arguments.  Third, there was no objection to the remarks made in the prosecutor's closing argument and, therefore, there was no opportunity for a possible curative instruction.  However, the trial judge instructed the jury four times that closing arguments may not be considered as evidence.  See Crouse, 447 Mass. at 576; accord Donnelly, 416 U.S. at 642-45; Darden, 477 U.S. at 178-83; Dagley, 540 F.3d at 17-18.

Accordingly, the prosecutor's remarks in the petitioner's case

were not so "fundamentally unfair" as to constitute a denial of due process. Therefore, Claim F is being denied as well. <u>See</u> <u>Donnelly</u>, 416 U.S. at 642-45.

F. <u>Claim G</u>.

In Claim G of the Petition, Crouse argues that the cumulative effect of the errors asserted in the Petition operated to deny him a fair trial. Petition at 18-19. For the reasons described above, however, the court has not found any errors entitling the petitioner to habeas relief. Therefore, the court is rejecting this claim as well. <u>See Mello</u> v. <u>Dipaulo</u>, 295 F.3d 137, 151-52 (1st Cir. 2002) (rejecting properly presented cumulative error argument where petitioner's other arguments were not meritorious).

VI. CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Proceedings, the court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA may issue only where a petitioner has made a "substantial showing of a denial of a constitutional right," meaning a petitioner must show that a reasonable jurist would find the court's assessment of the constitutional claims debatable. 28 U.S.C. §2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003). An issue "can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."

Id.  However, the "issuance of a COA must not be pro forma or a matter of course" because by enacting AEDPA "Congress confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not." Id. at 337.  The claims in Crouse's petition generally assert evidentiary errors by the trial court that are well within the bounds of the due process standard stated by the Supreme Court in Donnelly.  See 416 U.S. at 643.  Therefore, the court does not find its denial of the Petition to be debatable.  A COA is being denied as to all claims.

Because the court has denied a COA, Crouse may seek a COA from the Court of Appeals.  See §2254 Rule 11(a).

VII. ORDER

Accordingly, it is hereby ORDERED that:

1. Petitioner's Petition under 28 U.S.C. §2254 (Docket No. 1) is DENIED.

2. A COA is DENIED as to all claims.


                                    /s/ Mark L. Wolf
                            UNITED STATES DISTRICT JUDGE